Carson *v.* Clark.

---

JOHN CARSON, appellant *v.* WILLIAM CLARK, appellee.

*Appeal from Sangamon.*

In order to bar a subsequent action before a justice of the peace, on the ground that a prior suit between the same parties has been determined by a justice, it must be shown that the demands, in both suits, were of such a nature that they might be consolidated into one action, and that the first suit was tried.

To constitute a valid contract, it must be made by parties competent to contract, and be founded on a sufficient consideration. If the consideration be past and executed, it can then be enforced only upon the ground that the consideration or service was rendered at the request of the party promising.

A promise to pay for improvements made upon the public lands, will not bind the promisor if made after the purchase of the same.

A purchaser of land from the government, is under no moral or legal obligation to pay for improvements made thereon before his purchase and without his request.

The pre-emption laws of the U. S., cannot be construed as invitations to settle upon the public lands.

THE appellee, William Clark, brought an action against the appellant, before a justice of the peace of Sangamon county, which

(1) A judgment for *costs* cannot be rendered against an administrator in his personal character. *Ante* 55.

K*

---

---

was appealed to the Circuit Court, where a judgment was rendered in favor of the appellee. for $69,87.

The cause was tried at the April term, 1830, before the Hon. Samuel D. Lockwood.

J. SEMPLE, for the appellant.

S. T. LOGAN, for the appellee.

WILSON, Chief Justice, delivered the opinion of the Court :(1)

The bill of exceptions, or rather demurrer to evidence, in this case, presents this state of facts.

The plaintiff below made an improvement on the land of the United States which the defendant afterwards purchased of the government, and, after the purchase, promised the plaintiff to pay him the value of his improvements. It further appears from the evidence, that the plaintiff had, prior to to the commencement of this suit, instituted an action before a justice of the peace, upon another demand, without having joined this one with it; though it was at the time a subsisting demand. The first suit was never tried, but was compromised by the parties, and dismissed.

Upon this evidence, the Court below gave judgment in favor of the plaintiff, for the value of the improvements.

The first error assigned to reverse this decision, is, that the first suit commenced by the plaintiff, is a bar to this action. To support this assignment of error, it must appear that the first suit was tried; otherwise it will not be a bar to a subsequent action; and it must also be shown that the demands were of such a nature that they might be consolidated into one action. Neither of these points are made out by the evidence; and as the defendant holds the affirmative of the issue as to this ground of defence, it was incumbent upon him to make them out. The suit was dismissed without trial, and there is no evidence as to the extent of the demands in either suit. The Court cannot supply this defect, and by implication impose upon the party a forfeiture of his claim, or take from him the right of prosecuting it in the ordinary way.

The second assignment of error presents this question : Was the promise of the defendant founded on a sufficient consideration? or, Was it not made without any such consideration, and therefore void?

To constitute a valid contract, it must be made by parties competent to contract, and be founded on a sufficient consideration. If the consideration for the promise be past and executed, it can then be enforced only upon the ground that the consideration or service was rendered at the request of the party promising. This request must be averred and proved, or the moral obligation

(1) LOCKWOOD, Justice, dissented from the opinion of the Court.

under which the party was placed, and the beneficial nature of the service must be of such a character that it will necessarily be implied : as a promise by a master to pay his servant for past services. Here the inference is strong that the service was rendered at his request.

Or if a debt is due in conscience, a promise to pay will be binding : as where a father promised to pay for the maintenance of a bastard child. So, too, a promise founded upon an antecedent legal obligation will be valid, as a promise to pay a debt barred by the statute of limitations. Here the legal obligation is voidable, but the moral duty remains unimpaired, and constitutes a good consideration. Test the present case by the broad principle to be deduced from the examples cited, and where will be found any legal or moral obligation on the part of the defendant to constitute a sufficient consideration for his promise ? The plaintiff entered upon and improved the land of the government. The motive by which he was actuated in doing so, was entirely selfish, and the act itself unauthorized by law. The defendant was at the time a stranger to the transaction ; he had no interest in the land, and was no more benefitted, nor for aught that appears, more likely to be benefitted by it, than any other person. A request then cannot be inferred in the absence of all motive, and the request must be made, or the circumstances from which it is to be implied, must exist prior to, or be concurrent with, the act which constitutes the consideration. Whatever benefit might accrue to the plaintiff by reason of the improvements upon the land he acquired by purchase from the government, he did not receive from the defendant, by virtue of his promise, either title or possession. The land, with the improvements thereon, passed to him by the sale from the government. His promise, then, to pay for that for which he had already paid, and to which he had received a perfect title, was without any consideration.

If there is a moral obligation on the part of any one to make compensation to the plaintiff for the value of his improvements, it is on the part of the government, and under this view of the case it is contended, that the defendant as alienee of the land, incurred all the obligation and liability of the government, his alienor. But there is no principle upon which this position can be maintained. It is true, there are some covenants which run with the land ; but between such and the promise here set up, there is not one point of analogy. A purchaser from the government has not entailed upon him other or greater incumbrances or liability, than he would be subject to in purchasing from an individual. Suppose, then, that in the present case the improvements had been made at the special instance and request of the alienor. This would have imposed upon him a legal obligation to make an adequate compensation ; but surely his alienee would

incur no such obligation. If then this legal liability would not be imposed by a transfer of the land, it follows conclusively, that a moral duty which is regarded, both in law and ethics, as entirely personal, would not flow from it. If, however, it should be considered that the defendant was under the same obligation as his alienor, would it when coupled with his subsequent promise, impose upon him a legal obligation?

To determine this question, it is necessary to enquire whether there are any acts on the part of the government, from which a request to enter upon and occupy the public land is to be implied; or whether the act itself can be regarded as meritorious. As to the first branch of the enquiry, it is said that the pre-emption laws which have been passed from time to time, amount to a license and invitation to enter upon and occupy the land of the government. There would be much force in this reasoning, if these acts, granting a prior right of purchase to the occupant, were all the legislation relative to the public lands. But they are not. Whatever presumption they may afford in favor of a license by the government, is met and rebutted by the fact that there is a general law of Congress, which has been in force since the year 1807, forbidding, under severe penalties, all intrusion upon the public lands. And I understand, that in pursuance of the instructions of the Commissioner of the General Land Office, this law has been enforced in numerous instances. These pre-emption laws, then, can be regarded in no other light than as acts of grace, exempting such as at the time come within their provisions, from penalties which they had previously incurred,— but not as repealing or abrogating the general prohibition. If, then, there is no license to settle upon the public lands, but on the contrary it is forbidden, can the act of doing so be considered meritorious, or of that beneficial nature which would impose a moral duty on the government? It is not every benefit that may result to one, from the act of another, that will create this duty either in morality or conscience. The nature of the benefit, the manner in which it is conferred, or the motive which induced it, may be repugnant to the feelings and wishes of the person who is benefitted thereby. And no principle of law will sanction the idea that a moral obligation can be imposed upon another against his will. All the circumstances of the transaction must be of such a nature as presuppose a request, otherwise it will not be a good consideration for a promise. The case cited, where one man shot another, with the intention of killing him— but so far from succeeding in his design, the wound cured him of the dropsy, with which he was at the time afflicted—is an illustration of the principle that a benefit may be conferred without creating a moral or legal obligation to pay for it.

Under every aspect of the case, I am of opinion that the pro-

mise of the defendant below, was not founded on any legal or moral obligation, which is recognised as constituting a sufficient consideration for such a promise.

The judgment of the Court below is reversed with costs.

*Judgment reversed.*